UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BAYOU ACQUISITIONS, LLC, *et al.*                    CIVIL ACTION

VERSUS                                               NO. 22-4541

BADGER DAYLIGHTING CORP., *et al.*                   SECTION M (1)

## ORDER & REASONS

Before the Court is a motion to remand filed by plaintiffs Bayou Acquisitions, LLC, Bayou

Orthodontics Corporation d/b/a Bayou Braces and Dentistry, Dr. Joseph Braud, Jr., and Dr. Thuy

Nguyen (collectively, "Plaintiffs").[1]  Defendant Badger Daylighting Corp. ("Badger") responds in

opposition,[2] and Plaintiffs reply in further support of their motion.[3]  Having considered the parties'

memoranda, the record, and the applicable law, the Court grants Plaintiffs' motion to remand.

## I.    BACKGROUND

This matter involves a dispute arising out of Badger's alleged use of Plaintiffs' commercial

property (the "Property") during Badger's efforts to repair the Entergy electrical grid that was

damaged by Hurricane Ida.  The Property, which is located in Orleans Parish, consists of a dentist's

office and concrete parking lot surrounded by fences and a gated enclosure.[4]  Before evacuating

for the storm, Plaintiffs secured the Property by locking the gate.[5]  On August 29, 2021, Hurricane

Ida made landfall, devastating the electrical infrastructure and leaving thousands of Louisiana

residents without power.[6]  Ahead of the storm, Entergy pre-contracted with various businesses to

---

[1] R. Doc. 10.
[2] R. Doc. 13.
[3] R. Doc. 17.
[4] R. Docs. 1-2 at 3; 10-1 at 7.
[5] R. Doc. 10-1 at 7.
[6] *Id.* at 6.

establish staging sites for the repair crews, vehicles, and equipment necessary to assist in the restoration of utility services.[7]   As part of these restoration efforts, Badger was one of the companies that supplied and operated a fleet of vacuum trucks to replace downed power line posts.[8] Plaintiffs allege that on or around September 2, 2021, Badger, without Plaintiffs' consent, broke the lock on the gated enclosure and entered their Property with numerous excavation trucks, personnel, and equipment, despite Badger's knowledge that the Property was not one of Entergy's pre-contracted staging areas.[9]

Once Plaintiffs learned of Badger's presence and returned to the Property, Dr. Braud attempted to negotiate a lease agreement with Badger to allow it to continue using the Property for parking and staging its equipment, but no agreement was reached concerning the full extent or duration of Badger's occupation of the Property.[10]   Badger continued to occupy the Property for approximately ten days, during which time, according to Plaintiffs, Badger and/or Entergy hired armed, private security personnel to guard the Property.[11]   Plaintiffs allege that Dr. Braud attempted to access the Property on two occasions during this period but was met with hostility and threats of physical violence from the security personnel.[12]   In response, Dr. Braud locked the gate to the Property, blocked the entrance, and enlisted his own private security detail to protect himself and the Property, thereby effectively preventing Badger's fleet of repair vehicles from entering or exiting the Property.[13]

Plaintiffs allege that, within hours of Dr. Braud locking the entrance gate, Entergy dispatched its Customer Service Manager, Preston Favorite, to the Property to persuade Dr. Braud

---

[7] R. Doc. 1-2 at 3.
[8] R. Doc. 13 at 4.
[9] R. Doc. 1-2 at 4-5.
[10] Id. at 5.
[11] Id. at 5-9.
[12] Id. at 6-8.
[13] Id. at 8.

to unlock the gate.[14]  Other representatives and attorneys for Badger and/or Entergy also pleaded

with Plaintiffs, both by phone and during physical visits to the Property, that the gate be re-

opened.[15]  The following day, once his safety concerns were satisfied, Dr. Braud opened the gate.[16]

On or about September 13, 2021, Badger and Entergy completed their restoration work, and

Badger vacated the Property.[17]

Plaintiffs filed suit in state court against Badger and Entergy New Orleans, LLC, Entergy

Corporation, and Entergy Louisiana, LLC (collectively, the "Entergy Defendants"), asserting

claims for negligence and trespass and seeking damages for loss of use and enjoyment of the

Property, the cost to remediate the damaged Property, and mental anguish.[18]  On November 16,

2022, Badger removed the action to this Court on the basis of diversity subject-matter jurisdiction

pursuant to 28 U.S.C. § 1332.[19]  In its notice of removal, Badger concedes that at least certain of

the Entergy Defendants are non-diverse but urges that they were improperly joined and, as a

consequence, their citizenship should be disregarded for purposes of diversity jurisdiction.[20]

Plaintiffs subsequently filed the instant motion to remand.[21]

## II.    PENDING MOTION

In urging remand, Plaintiffs argue that complete diversity is lacking because Plaintiffs

stated multiple, colorable state-law claims against the Entergy Defendants and, thus, they were

properly joined.[22]  Plaintiffs contend that the allegations state a plausible claim for negligence

against the Entergy Defendants because, as the employer or principal of Badger, they are liable for

---

[14] *Id.*
[15] *Id.*
[16] *Id.* at 9.
[17] *Id.*
[18] *Id.* at 9-10.
[19] R. Doc. 1 at 2.
[20] *Id.* at 3.
[21] R. Doc. 10.
[22] R. Doc. 10-1 at 10-17.

3

Badger's actions on the Property.[23]  Moreover, Plaintiffs argue that they allege a variety of viable intentional tort claims against the Entergy Defendants, including trespass.[24]  Plaintiffs maintain that, because Badger fails to address the adequacy of any of Plaintiffs' intentional tort claims, it has failed to carry its burden of showing improper joinder on this basis alone.[25]  Finally, Plaintiffs assert that (1) the evidence offered by Badger fails to justify a summary inquiry beyond the pleadings, and (2) even if the Court decides to consider the evidence, it fails to demonstrate that Plaintiffs have no reasonable possibility of recovery against the Entergy Defendants.[26]

In opposition, Badger argues that Plaintiffs' allegations do not state any valid claim against the Entergy Defendants under Louisiana law.[27]  Badger posits that Plaintiffs' claims are entirely "superficial and conclusory" because they lump all "defendants" together in the allegations without identifying any acts or omissions committed specifically by any of the Entergy Defendants.[28]  Badger argues that Plaintiffs fail to allege facts demonstrating the requisite elements of negligence under a duty-risk analysis because there is a lack of evidence that the Entergy Defendants maintained control over Badger such that Badger could plausibly be classified as their agent or employee.[29]  Thus, Badger concludes that because no actionable claims against the Entergy Defendants are pleaded, they are improperly joined.[30]

---

[23] R. Docs. 10-1 at 14-17; 17 at 3-6.
[24] R. Docs. 10-1 at 14-17; 17 at 6.
[25] R. Doc. 17 at 6.
[26] *Id.* at 1-6.
[27] R. Doc. 13 at 1-3, 13-17.
[28] *Id.* at 7-8.
[29] *Id.* at 14-15.
[30] *Id.* at 7.

### III.   LAW & ANALYSIS

#### A.  Remand Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).  Remand to state court is appropriate if the federal court lacks subject-matter jurisdiction.  Subject-matter jurisdiction must exist at the time of removal to federal court based on the facts and allegations contained in the complaint.  *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("[J]urisdictional facts must be judged as of the time the complaint is filed ….").  Because federal courts have only limited jurisdiction, the removal statute is strictly construed, and any doubts or ambiguities are resolved against removal and in favor of remand.  *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  The party seeking removal has the burden of establishing "that federal jurisdiction exists and that removal was proper."  *Manguno*, 276 F.3d at 723.

#### B.  Improper Joinder

Section 1441(b)(2) permits a defendant to "remove a case from state court to federal court on the basis of diversity jurisdiction so long as none 'of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'"  *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018) (quoting 28 U.S.C. § 1441(b)(2), and citing *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017)).  However, the lack of complete diversity will not render an action non-removable if a party has been improperly joined.  *Id.*  Instead, if a "plaintiff improperly joins a non-diverse defendant, … the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from

the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016).  The defendant can demonstrate improper joinder by showing either (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant in state court.[31]  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013).  The improper joinder doctrine is a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'"  *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)).  "Under the second prong (inability to establish a cause of action), the court must determine whether 'there is arguably a reasonable basis for predicting that state law might impose liability.'"  *Id.* (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)).  "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one."  *Ross*, 344 F.3d at 462 (emphasis in original).  "[T]he existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court."  *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), the Fifth Circuit explained the procedure used by courts to determine whether a plaintiff has improperly joined a non-diverse defendant.  A court first looks "at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."  *Id.* at 573.  However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder ... the district court may, in its discretion, pierce the

---

[31] Badger does not assert that Plaintiffs committed actual fraud in pleading the jurisdictional facts.  *See* R. Doc. 1.  Hence, only the second prong of the test for improper joinder is at issue in this case.

6

pleadings and conduct a summary inquiry." *Id.* The Fifth Circuit "caution[ed] that a summary

inquiry is appropriate only to identify the presence of discrete and undisputed facts that would

preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. In conducting such an

inquiry, the district court may "consider summary judgment-type evidence in the record, but must

also take into account all unchallenged factual allegations, including those alleged in the

complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir.

2003). Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved

in [the plaintiff's] favor." *Id.*

### C. Whether Plaintiffs Improperly Joined the Entergy Defendants

Plaintiffs allege a variety of state-law tort claims against the Entergy Defendants, including

claims for negligence and trespass. For the following reasons, the Court finds that Badger failed

to carry its "heavy burden" of demonstrating that Plaintiffs have no reasonable possibility of

recovery against the Entergy Defendants.

#### 1. Trespass

Plaintiffs allege that the Entergy Defendants trespassed onto the Property. Under Louisiana

law, the tort of trespass applies to immovable property. *MCI Commc'ns Servs., Inc. v. Hagan*, 74

So. 3d 1148, 1155 n.12 (La. 2011). An act of civil trespass is defined as "'the unlawful invasion

of the property or possession of another,'" and the elements of the tort are: (1) "intent to enter

property that belongs to another (defendant need not know the property belongs to another)" and

(2) "physical entrance onto the land of another." *Barney v. Plaquemines Par. Gov't ex rel.

President*, 22 So. 3d 1117, 1118-19 (La. App. 2009) (quoting *Thibodeaux v. Krouse*, 991 So. 2d

1126 (La. App. 2008)). "[A] defendant may be held liable for an inadvertent trespass resulting

from an intentional act." *Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.*, 803 So. 2d 86, 96

(La. App. 2001).  Moreover, "[e]ven though the work may have been done by another, the party supervising and/or directing the work and ordering the trespass is liable." *Richard v. Richard*, 24 So. 3d 292, 296 (La. App. 2009).

Here, Plaintiffs allege that the Entergy Defendants (along with Badger) hired a private security service to guard the Property and that actions of this service prevented Plaintiffs' full use and enjoyment of their Property.  The allegations state that armed personnel of the private security service physically entered the Property without Plaintiffs' consent and were involved in hostile encounters with Dr. Braud on at least two occasions.[32]  On the face of these allegations that the Entergy Defendants essentially directed, supervised, or ordered the trespass by the security service,[33] Plaintiffs have stated a plausible claim of trespass at this pleadings stage.

Moreover, Plaintiffs have a reasonable possibility of recovery against the Entergy Defendants on the theory that the Entergy Defendants facilitated Badger's trespass onto the Property.  In *Constantin Land Trust v. BP America Production Company,* the court granted a plaintiff's motion to remand, holding that the non-diverse defendants negligently negotiated an agreement on behalf of BP, which led to the claimed trespass onto the plaintiff's property.  2012 WL 1069902, at *1 (E.D. La. Mar. 28, 2012).  There, the court found that the non-diverse defendants may have "facilitate[d] a trespass" when they negotiated the agreement with BP that was used as the basis for BP to enter the plaintiff's property, without consent, to perform construction and dump materials.  *Id.* at *5.  While the non-diverse defendants may not have directly ordered BP's trespass of the property, the court found that their actions "facilitated or 'set in motion'" BP's trespass onto the plaintiff's property.  *Id.* at *6.  Therefore, the court concluded

---

[32] R. Doc. 1-1 at 5-8.
[33] In its opposition, Badger fails to address whether Plaintiffs have stated a plausible trespass claim against the Entergy Defendants.

that the plaintiff pleaded sufficient facts to state a plausible claim for trespass against the non-diverse defendants and remanded the case to state court. *Id.*

In the case before the Court, the Entergy Defendants' actions may have "facilitate[d] a trespass" because their alleged actions and communications enabled Badger's continued presence on the Property.  Once Plaintiffs objected to Badger's presence, the Entergy Defendants allegedly hired a private security service to maintain and protect Badger's presence on the property.  And Plaintiffs allege that the security service aided Badger's continued occupation of the Property by, for example, threatening Dr. Braud when he attempted to access the Property.[34]  Therefore, at this pleadings stage, the allegations of the complaint also state a plausible claim against the Entergy Defendants on a theory that they facilitated Badger's trespass of the Property. *See id.* at *5-6.

### 2.  Negligence

Plaintiffs also argue that joinder of the Entergy Defendants is proper because their negligence claims allege that Badger is an employee or agent of the Entergy Defendants and so they are legally responsible for Badger's actions.  In response, Badger insists that "Plaintiffs are flat wrong in suggesting that Badger was anything other than an independent contractor,"[35] and it asks the Court to pierce the pleadings, attaching a declaration from a Badger employee and the purported contract between Badger and the Entergy Defendants in support of its position.[36]  Badger argues that because "'[i]t is well established that a principal is not liable for the activities of an independent contractor committed in the course of performing its duties under the contract,'" Plaintiffs cannot state negligence claims against the Entergy Defendants.[37]

---

[34] R. Doc. 1-2 at 6-8.
[35] R. Doc. 13 at 15-16.
[36] R. Docs. 13-1 (declaration); 13-2 (contract).
[37] R. Doc. 13 at 14 (quoting *Davis v. Dynamic Offshore Res., L.L.C.*, 865 F.3d 235, 236 (5th Cir. 2017)).

Badger thus requests that the Court go beyond the pleadings to determine Badger's status relative to the Entergy Defendants.  Under Louisiana law, "[t]he distinction between an employee and an independent contractor status is a factual determination to be decided on a case-by-case basis." *Bolden v. Tisdale*, 347 So. 3d 697, 709 (La. 2022).  "The four primary evidentiary factors considered in deciding whether ... an employer-employee relationship [as opposed to an independent contractor relationship] exists relate to whether the alleged employer has the right or duty, relative to the employee, of: (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control." *Id.* at 708.

This Court, in its discretion, declines Badger's invitation to pierce the pleadings and conduct a summary inquiry into whether an employer-employee or independent contractor relationship existed as between Badger and the Entergy Defendants.  This is because "a summary inquiry [for improper joinder] is appropriate *only* to identify the presence of *discrete and undisputed* facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74 (emphasis added).  A summary inquiry into Badger's status relative to the Entergy Defendants would necessarily be fact-intensive and hotly contested, rather than a straightforward identification of discrete and undisputed facts.[38]   For example, the Entergy Defendants' lack of "operational control" over Badger is not undisputed, as Plaintiffs point to allegations in their complaint which they contend show that the Entergy Defendants had a right to supervise and control Badger.[39]  Clearly, a resolution of this material factual dispute on summary

---

[38] In *Smallwood*, the Fifth Circuit listed examples of discrete facts it deemed appropriate to identify on a summary inquiry into improper joinder, including "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that *easily* can be disproved if not true."  385 F.3d at 574 n.12 (emphasis added).  Though not exhaustive, this list further supports the conclusion that the Fifth Circuit did not envision complicated factual inquiries, such as an examination of independent contractor status, to be within the scope of a court's summary inquiry into whether a party was improperly joined.

[39] For example, Plaintiffs allege that (1) the Entergy Defendants had the authority to select the authorized staging sites, R. Doc. 1-2 at 3; (2) Badger needed authorization from the Entergy Defendants to enter into a rental

inquiry would be inappropriate under *Smallwood*.  Finally, a determination of the independent

contractor issue would require the Court to weigh the evidence that Badger submits as proof of its

independent contractor status (*i.e.*, the declaration and contract) and to evaluate credibility.  To do

so would "carr[y] a heavy risk of moving the court beyond jurisdiction and into a resolution of the

merits."  *Id.* at 574 ("Indeed, the inability to make the requisite decision in a summary manner

itself points to an inability of the removing party to carry its burden."); *Wilford v. Nationwide Mut.*

*Ins. Co.*, 2021 WL 4810914, at *4 (E.D. La. Oct. 15, 2021) ("The summary inquiry for improper

joinder does not allow the Court to weigh evidence or to resolve material factual disputes as if it

were sitting as the factfinder.  And a resolution of this issue would require the Court to do so by

assessing the credibility of [witnesses].  Such an inquiry would move the Court beyond the

parameters prescribed by the Fifth Circuit.").

Absent a summary inquiry, and based only on the pleadings, Badger has failed to satisfy

its "heavy burden" at the motion-to-remand stage of establishing its status as an independent

contractor as would foreclose Plaintiffs' negligence claim.  *See Wilford*, 2021 WL 4810914, at *4

(granting plaintiff's motion to remand after declining to determine his status as employee or

independent contractor on an improper-joinder analysis).

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion to remand (R. Doc. 10) is GRANTED, and this

matter is REMANDED to Civil District Court for the Parish of Orleans, Louisiana.

---

agreement with Plaintiffs for use of the Property, *id.* at 5-6; (3) the Entergy Defendants hired private security to ensure
Badger's unfettered access to the Property, *id.*; and (4) representatives of the Entergy Defendants negotiated with
Plaintiffs to restore Badger's access to the Property.  *Id.* at 8-9.

New Orleans, Louisiana, this 6th day of March, 2023.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE